999 S.W.2d 228 (1999)
In re: The MARRIAGE OF Ellen KOHRING and Steven Snodgrass,
Ellen Kohring, f/k/a Ellen Snodgrass, Respondent,
v.
Steven Snodgrass, Appellant.
No. 81139.
Supreme Court of Missouri, En Banc.
August 24, 1999.
Rehearing Denied September 21, 1999.
*230 Jack J. Cavanagh, Jr., Paul J. Vaporean, St. Louis, for appellant.
Greg L. Roberts, Chesterfield, for respondent.
*231 LIMBAUGH, J.
This is an appeal of a judgment ordering child support payments for college expenses. The case originated in 1989 when the marriage of appellant Steven Snodgrass and respondent Ellen Snodgrass (now Kohring) was dissolved in a proceeding before the Circuit Court of St. Louis County. The court awarded primary physical custody of the two minor children, Julie and Michael, to their mother and required their father to pay child support. In 1994, the court modified the child support order and increased father's monthly child support payment to $900. Following their daughter's application to attend the University of Missouri-Columbia in 1997, mother filed a motion to modify to compel father to pay a portion of their daughter's expenses for her college education. In response, father filed a motion to dismiss and a cross-motion to terminate child support. After an evidentiary hearing, the court overruled father's motions and ordered him to pay 80% of the daughter's expenses to attend the university as well as a portion of mother's attorney fees.
Father now raises the following points on appeal: 1) that section 452.340.5, RSMo Supp.1998the statute permitting child support awards for college expensesis unconstitutional because it violates the equal protection clause; 2) that daughter failed to comply with the requirements of section 452.340.5 in order to qualify for support payments for college expenses; 3) that the evidence did not support the disproportionate amount (80%) of support payments assessed against father; and 4) that the evidence did not support an award of attorney fees.
This Court has exclusive appellate jurisdiction because of the assertion that section 452.340.5 is invalid. Mo. Const. art. V, sec. 3. The judgment of the circuit court is affirmed in part and reversed in part.

I.
First, father claims that section 452.340.5 is unconstitutional because it violates the equal protection clauses of the United States Constitution and the Missouri Constitution. U.S. Const. amends. V and XIV; Mo. Const. art. I, sec. 2. In relevant part, section 452.340.5 states:
If when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to re-enroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs.
Statutes are presumed to be constitutional. Linton v. Missouri Veterinary Medical Bd., 988 S.W.2d 513, 515 (Mo. banc 1999). Because of the presumption of constitutionality, the burden to prove a statute unconstitutional is upon the party bringing the challenge. Id. This Court will not invalidate a statute "unless it clearly and undoubtedly contravenes the constitution and plainly and palpably affronts fundamental law embodied in the constitution." Id.
When considering a claim that a statute violates the Equal Protection Clause, the first step is to determine whether the challenged statutory classification "operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly *232 protected by the Constitution. ..." Missourians for Tax Justice Educ. Project v. Holden, 959 S.W.2d 100, 103 (Mo. banc 1997) (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). If so, the classification is subject to strict judicial scrutiny to determine whether it is necessary to accomplish a compelling state interest. See id. Otherwise, review is limited to a determination of whether the classification is rationally related to a legitimate state interest. Id.

A.
Father argues that section 452.340.5 burdens a previously unrecognized suspect class of unmarried, divorced, or legally separated parents and imposes on them a monetary obligationfunding their children's college educationthat does not exist for married parents. A suspect class exists and will be legally categorized as such where a group of persons is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Father admits that no authority exists for his claim that unmarried, divorced, or legally separated parents constitute a suspect class. Furthermore, the status of suspect class traditionally has been reserved for classifications based on race, national origin, and illegitimacy, Call v. Heard, 925 S.W.2d 840, 846-47 (Mo. banc 1996), and in some cases, gender, see, e.g., State v. Stokely, 842 S.W.2d 77, 79 (Mo. banc 1992). Accordingly, this Court declines father's invitation to create a new suspect class.
Alternatively, father argues that section 452.340.5 burdens a different suspect classillegitimate children and children from broken homesby alienating them from the parent required to pay support and by subjecting them "to the regrettable but almost inevitable reality of divided allegiances to their parents." Father concedes that this claim is tenuous. While alienating children from their non-custodial parents may in some cases be an unfortunate byproduct of the statute, the very purpose and function of the statute is to support, rather than burden, the children in question. As such, even if these children constitute a suspect class, there is no equal protection violation.

B.
Father also contends that section 452.340.5 impinges upon unmarried parents' "fundamental right" to decide whether to lend financial support to their young adult children over whom they can legally exert no control. Fundamental rights include "the rights to free speech, to vote, to freedom of interstate travel, as well as other basic liberties." Mahoney v. Doerhoff Surgical Services, Inc., 807 S.W.2d 503, 512 (citing Kramer v. Union Free School Dist., 395 U.S. 621, 626, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)). To be sure, the parent-child relationship is an "associational right ... of basic importance in our society," M.L.B. v. S.L.J., 519 U.S. 102, 116, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), however, a parent's financial obligations to his or her child are considered merely economic consequences that do not critically affect associational rights. See Rivera v. Minnich, 483 U.S. 574, 580, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987). Because father's asserted "right" involves only his economic, rather than his associational interests with his daughter, section 452.340.5 is not subject to strict judicial scrutiny. Although this question appears to be one of first impression in this state, the jurisdictions that have considered it have held uniformly that a parent has no fundamental right to avoid providing support for his or her children past age eighteen. Curtis v. Kline, 542 Pa. 249, 666 A.2d 265, 268 (1995); Birchfield v. Birchfield, 417 N.W.2d 891, 893-94 (S.D.1988); *233 In re Marriage of Vrban, 293 N.W.2d 198, 201 (Iowa 1980); Childers v. Childers, 89 Wash.2d 592, 575 P.2d 201, 209 (1978). In view of these precedents, and the absence of any case to the contrary, this Court declines to hold that section 452.340.5 impinges upon a fundamental right.

C.
Because section 452.340.5 involves no suspect classifications and impinges upon no fundamental right, it will withstand constitutional muster so long as it is rationally related to a legitimate state interest. Missourians for Tax Justice Educ. Project. 959 S.W.2d at 103. In that regard, legislation that touches only upon economic interests "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Fust v. Attorney General for the State of Mo., 947 S.W.2d 424, 432 (Mo. banc 1997) (citing Hodel v. Indiana, 452 U.S. 314, 331, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981)). When undertaking rationality review, it is not the province of this Court "to question the wisdom, social desirability or economic policy underlying a statute as these are matters for the legislature's determination." Batek v. Curators of University of Missouri, 920 S.W.2d 895, 899 (Mo. banc 1996) (citing Winston v. Reorganized Sch. Dist. R-2, 636 S.W.2d 324, 327 (Mo. banc 1982)).
Mother correctly asserts that the state has a legitimate interest in securing higher education opportunities for children from broken homes. As this Court stated in Leahy v. Leahy, 858 S.W.2d 221 (Mo. banc 1993), "[t]he children of an existing marriage derive many benefits that [children] of a dissolved marriage [are] deprived of sharing," id. at 230, and therefore, the state has a legitimate interest in "protecting the children of a marriage that is dissolved." Id. at 229. Section 452.340 rationally advances that legitimate state interest by requiring financially capable parents to lend support to their children wishing to pursue higher education. Additionally, the statute touches only upon economic interests. For these reasons, there is no constitutional violation.

II.
Father also argues that the trial court erred in the application of section 452.340.5 because the evidence, he alleges, showed that daughter failed to comply with the requirements of that section. In pertinent part, that section states:
5. ... If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school ... and so long as the child enrolls for and completes at least twelve hours of credit each semester, ... the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs. To remain eligible for such continued parental support ... the child shall submit to each parent a transcript... provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and ... the courses which the child is enrolled in for the upcoming term and the number of credits for each course. ...
These provisions contemplate proof of eligibility for parental support on a term-by-term or semester-by-semester basis. There appear to be no reporting requirements for the first semester because the list of reporting requirements is prefaced by the words "To remain eligible for such continued parental support." The implication is that that portion of the statute pertains only to the second and subsequent terms or semesters. Therefore, eligibility for support during the first semester may be established simply by proof of enrollment, which daughter submitted in this case. However, "To remain eligible ..." for the second semester and *234 each subsequent semester, daughter was required to comply with the specified reporting requirements. Mother admits in her brief before this Court that father was not given the daughter's transcript showing the courses enrolled in, grades, and credits received, until May 1998, and by then, daughter had already completed the Fall 1997 term and had nearly completed the Spring 1998 term. Consequently, while the circuit court was correct in ordering father to pay child support for daughter's expenses for the Fall 1997 term, the court erred in ordering support for the Spring 1998 term.
Despite daughter's failure to comply with the statute to qualify for support for the Spring 1998 term, father is not relieved of future payments for daughter's educational expenses. To the extent that daughter complies with the statutory preconditions for subsequent terms or semesters, she remains eligible for parental support until she completes her college education or she reaches the age of twenty-two, whichever first occurs.

III.
Next, father contends that the trial court erroneously ordered him to pay a disproportionate amount of (80%) of daughter's higher education expenses because the court's order was based on an erroneous calculation of his 1998 year-to-date income. On appellate review, a determination of child support will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or misstates or misapplies the law. Buckner v. Jordan, 952 S.W.2d 710, 711 (Mo. banc 1997). At the hearing on the motion to modify, father testified that he operated a computer consulting business as an independent contractor and acknowledged that his annual income for the years 1994 through 1997 ranged from approximately $78,000 to just under $100,000. In contrast, as of April of 1998, a month before the hearing, father claimed that his year-to-date income was only $8,000, due to the fact that he had lost his primary client. Nevertheless, the circuit court concluded that father was underemployed for purposes of reporting his 1998 income and imputed his annual income for 1998 in the amount of $99, 254, the four-year average of his 1994-1997 income. This method of averaging income to project a continuing level of income is permissible. In re the Marriage of Glueck. 913 S.W.2d 951 (Mo.App.1996); Frisella v. Frisella, 872 S.W.2d 637 (Mo.App.1994). The trial court did not err when it ordered father to pay 80% of daughter's higher education expenses.

IV.
Finally, father contends that the circuit court erred in ordering him to pay $2,750 of mother's $3,674.48 attorney fees. Under section 452.355.1, RSMo Supp.1998, the court is authorized to award attorney fees "after considering all relevant factors including the financial resources of both parties. ..." On appeal, father bears the burden of proving that the award constituted an abuse of discretion. T.B.G. v. C.A.G., 772 S.W.2d 653, 655 (Mo. banc 1989).
In particular, father contends that mother is not entitled to attorney fees because her claim for college expenses under section 452.340.5 was "frivolous" in view of daughter's failure to comply with the reporting requirements of the statute. As we have held, however, daughter failed to comply only as to the Spring 1998 term, and even then, the claim for support based on daughter's substantial, albeit untimely compliancewas hardly frivolous. In rejecting father's contention that mother's claim for support was frivolous, we also note that mother's income had decreased due to illness, and we reiterate that father had a history of substantial income. For these reasons, the circuit court did not abuse its discretion in awarding attorney fees.

*235 V.
The judgment of the circuit court is reversed to the extent that father was ordered to pay a percentage of daughter's higher educational expenses for the Spring 1998 term. In all other respects, the judgment is affirmed.
PRICE, C.J., WHITE, HOLSTEIN, WOLFF and BENTON, JJ., and PUDLOWSKI, Sp.J., concur.
COVINGTON, J., not participating.