Patricia Ann (Myers) MORTON, Respondent,

v.

Terry William MYERS, Appellant.

No. WD 57041.

Missouri Court of Appeals, Western District.

June 27, 2000.

Sandra P. Ferguson, Kansas City, for appellant.

Michael J. Svetlic, Douglas G. Wemhoff, Kansas City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge ROBERT G. ULRICH and Judge JAMES M. SMART, Jr.

LAURA DENVIR STITH, Presiding Judge.

Appellant Terry William Myers ("Father") appeals the trial court's judgment sustaining Patricia Ann (Myers) Morton's ("Mother") motion to modify the amount of child support payable by him. Father argues that because Mother effectively denied him visitation with their daughter, Andrea Nicole Myers, and failed to provide him with medical information and information about her attendance at and grades in college, his obligation to continue to pay child support should have abated. He also argues that the court failed to consider his daughter's income in arriving at the amount of his child support obligation and failed to specifically determine the credit to which he was entitled toward his obli-

gation for extra support previously paid to Mother. He also objects to the award of attorney's fees to Mother.

We find the evidence supports the trial court's conclusion that Mother did not improperly interfere with Father's visitation rights, and that the court did not err in its treatment of his daughter's earnings or in the award of attorney's fees. We also find, however, that his daughter's failure to provide him with notice of educational information as required under Section 452.340.5 precluded his daughter from being entitled to support for the semesters during which such necessary statutory notice was not provided. We also find the trial court was insufficiently specific in delineating the amount of the credit due Father for support payments made in 1998, and that, as a result of our holdings herein that Father was not obligated to pay support during Andrea's Winter/Spring and Fall 1998 semesters, the trial court must recalculate the credit to which Father is entitled. For all of these reasons, we affirm in part and reverse in part and remand to the trial court for further proceedings consistent with this opinion.

## I.  STATEMENT OF FACTS

On September 3, 1981, the marriage between Father and Mother was dissolved. In the original decree of dissolution, Mother was given primary physical custody of Andrea, the only child of the parties, who had been born on May 24, 1979. Father was given visitation rights and was ordered to pay child support in the amount of $420.00 per month.

Over the ensuing years, the original dissolution decree was modified on two occasions in respects not relevant here. In addition, although the original and modified decrees required that child support be paid through the Clerk of the Court, since the dissolution, with Mother's consent, Father has paid the support directly to Mother. On January 1, 1996, Father voluntarily increased the amount of support he paid to Mother to $500.00 per month. At trial,

Mother testified that she had no intention of denying Father credit for the additional support he had paid.

Andrea turned 18 on May 24, 1997. She graduated from high school a month later and registered to attend college at the University of Missouri at Kansas City (UMKC). Beginning in November 1997, and continuing until April 1998, Father stopped paying child support for Andrea. He told Mother that he had done so because, although Mother had orally told him that Andrea would be attending college in the fall, he had not been furnished with written enrollment verification regarding Andrea's attendance at UMKC. Mother claimed that she had sent Father a copy of a letter from UMKC dated July 21, 1997, certifying that Andrea was enrolled as a full-time student for the Fall 1997 semester (although, since this was prior to registration, the letter could not list any specific courses). As a result of this standoff, on January 9, 1998, Mother filed a motion for modification and contempt, requesting that the amount of support be increased and that Father be held in contempt for failing to make child support payments.

Father filed an answer stating that he had written support checks for the months from November 1997 onward, but was holding them because Mother had failed to provide him with the notice required by Section 452.340.5 as to what classes Andrea was taking and her grades in those classes. He introduced into evidence four letters, dated October 15, 1997, October 31, 1997, November 15, 1997, and March 16, 1998, each of which was a request from him to Mother for information about Andrea's schooling. Mother did receive the letters. Father says that the first time he received a written response regarding Andrea's enrollment was via fax on April 16, 1998. Only after he received the April 16, 1998 fax, and after he was placed under threat of garnishment for refusal to pay court-ordered child support, did Father release the support checks covering the peri-

od of November 1997 to April 1998, paying them directly to Mother.

Mother denied that she had failed to keep Father informed about Andrea's schooling. She claims that she had forwarded to him UMKC's July 21, 1997 letter confirming Andrea's enrollment, and claims that she forwarded all other correspondence she received from UMKC to Father. Mother claims that in March 1998 she also sent Father a handwritten note which listed the courses Andrea had taken in the Fall 1997 semester, the grades she had received and her grade point average. Father claims, however, that this note was not received until it was faxed to his attorney on April 16, 1998. Accompanying the fax were a copy (according to Mother, the second copy) of UMKC's July 21, 1997 letter, and of a February 20, 1998, letter from UMKC certifying that Andrea was taking 14 hours that semester. No formal transcript or other record from the University was sent to Father formally notifying him of Andrea's completion of the Fall 1997 semester or Winter/Spring 1998 semester, or of her grades for those semesters, until December 8, 1998, after the trial court ordered Mother to provide these documents. Even at the latter time, so far as the record shows, the information provided did not include course and credit information as to the classes for which Andrea had registered for the Fall 1998 semester.

Of course, in the usual case, even if no one provided Father with formal notification about his daughter's school performance, Father might have learned about what courses she was taking and what grades she had received from his daughter herself. However, Father and Andrea did not get along well, and they became estranged at around the time of Andrea's high school graduation. Father blames Mother for the estrangement, and claims that Mother's acts effectively denied him rightful visitation with his daughter. Among other things, he claims that Mother told Andrea that when she reached 18 she could decide for herself whether to continue visiting Father, thus not taking an active role to ensure that Andrea did so. Mother would also, he alleges, overreact with an overabundance of affection when Andrea returned from visits with Father. Father claims this had the effect of alienating Andrea from him, and that because Andrea had not visited Father since her 18th birthday, he has been denied visitation. Accordingly, he believes that the court erred in not enforcing his right to visitation, and in not granting him monetary relief due to the denial of visitation.

Mother claims that Father is solely responsible for the estrangement. On the night of Andrea's 18th birthday, Father had planned a dinner party for her. Andrea had arrived 45 minutes late and had already eaten, however, and a terrible fight ensued between Andrea and her father during which Father cursed at his daughter, calling her a "f b——". Mother also testified that she has encouraged Andrea to visit with Father and Father admitted that Mother never affirmatively tried to prevent visitation, claiming only that she would not make Andrea see him.

After hearing this evidence and denying the contempt motions of both parties, the trial court sustained Mother's motion to modify, finding that, because of a substantial and continuing change in circumstances, the previously ordered amount of child support payments was unreasonable. Accordingly, the court ordered Father to pay to Mother $827.89 per month retroactively from January 1, 1998 to December 17, 1998, and ordered Father to pay to Mother $698.40 from December 17, 1998 until either a future order of the court or emancipation, whichever occurred first, giving Father credit for child support paid directly to Mother from January 17, 1998 onward. Additionally, the court ordered Father to maintain coverage for his daughter on his health insurance plan and to pay an 80% share of uninsured expenses. Finally, Father was ordered to pay a portion

of Mother's attorney's fees in the amount of $3,000.00.

Father appeals, alleging the trial court erred in failing to find that Mother caused his estrangement from his daughter, that the trial court erred in failing to either order Mother into compliance with its prior visitation order or find her in contempt for failing to comply, that the trial court erred in ordering him to pay for Andrea's support during college despite the failure to provide him with necessary proof of her attendance and satisfactory completion of the required number of courses, that the court erred in failing to be specific as to the amount of previously paid child support for which he was to receive credit, and that the court erred in awarding Mother attorney's fees. We affirm in part and reverse in part.

## II. STANDARD OF REVIEW

The decision of the trial court will be affirmed on appeal unless no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976); *Shiflett v. Shiflett,* 954 S.W.2d 489, 492 (Mo.App. W.D.1997). We "should set aside a judgment on the ground that it is against the weight of the evidence only 'with caution and with a firm belief that the decree or judgment is wrong.'" *Harris v. Harris,* 803 S.W.2d 167, 169 (Mo.App. S.D.1991), *quoting, Jun v. Murphy,* 763 S.W.2d 290, 294 (Mo.App. E.D.1988). We afford the trial court deference with regard to its determinations of credibility and view the evidence in the light most favorable to its decision. *Shiflett,* 954 S.W.2d at 492.

## III. DENIAL OF VISITATION

■ Father first argues that the trial court erred in not finding that Mother was responsible for alienating him from his daughter, and that we should order the court to abate his child support obligation for the time he was denied visitation, find

Mother in contempt under Section 452.400 for keeping Andrea from him and withholding college and medical information, mandate that Mother comply with the prior visitation order and provide her daughter's medical and college information, and grant him credit for child support already paid. The trial court found Mother was not responsible for Andrea's refusal to visit with Father, and thus refused to grant Father the relief he requested. We review to determine whether substantial evidence supported this ruling.

■ The interference by one parent with another parent's visitation rights is a change in circumstances that may justify modification of custody, especially if such interference constitutes an unjustified and flagrant pattern of willful denial of visitation. *Lindell v. Coen,* 896 S.W.2d 525, 528 (Mo.App. W.D.1995). Interference with custody rights is not in itself a conclusive factor, but it is a relevant factor to be considered in a modification proceeding. *Conoyer v. Conoyer,* 695 S.W.2d 480, 483 (Mo.App.1985).

Here, the record is undisputed that Mother complied with all court-ordered visitation during the time that Andrea was less than 18 years old. Father simply claims Mother should have made Andrea continue visitation with him when she turned 18, and that by telling Andrea that visitation was up to her to decide once she was 18, and by being overly affectionate to Andrea after she visited Father, Mother in effect interfered with his visitation rights.

Father cites no cases to support his argument that Mother can be held to have interfered with visitation simply by being affectionate or by correctly informing Andrea that, once she was of age, it was up to her to decide whether and how much to visit with Father, and we decline to so hold. Moreover, there is no evidence in the record that Mother told Andrea not to visit Father or that she affirmatively denied him visitation, and Father concedes as much. So far as the record shows, it was

Andrea who made the decision not to have further visitation with Father once she was of age, and this decision was made based on her deteriorated relationship with Father, culminating in the fight they had on her 18 th birthday when Father's plans for a dinner party to celebrate the occasion were spoiled because Andrea arrived 45 minutes late and had already eaten. Father swore at her and Andrea left Father's house and afterward did not return his telephone calls. Mother cannot be held responsible for Andrea's independent decision to discontinue visitation with Father at that point.

We addressed a similar claim in *Carmack v. Carmack*, 947 S.W.2d 842 (Mo. App. W.D.1997). There, as here, Father claimed that Mother should be held responsible for her daughter's refusal to continue visitation with him once she turned 18. In rejecting this argument, we stated:

> [W]here, as here, the father is granted visitation, then Section 452.340.6 RSMo Supp.1995 does allow for abatement of support if the custodial parent has, without good cause, failed to provide visitation to the noncustodial parent pursuant to the decree. No evidence was presented below that Mrs. Carmack had denied Mr. Carmack visitation with Melissa. Melissa was 20 years old at the time of trial, and she simply did not want to have any contact with her father. If Mr. Carmack believed that Mrs. Carmack had withheld visitation, he had the means to enforce his visitation with Melissa pursuant to Section 452.400 RSMo Supp.1995. He chose not to utilize these means.

*Id.* at 846–47.

Here, as in *Carmack*, Mother cannot be held responsible for her daughter's decisions made after she reached the age of majority. Mother granted Father all ap-

propriate visitation when it was within her control to do so. For these reasons, we find that there was substantial evidence to support the trial court's finding that Mother did not improperly interfere with Father's visitation rights, and so there was no error in denying Father's contempt motion, his request to abate payment of child support, or his request for the other remedies permitted under Sec. 452.400.[1]

### IV. FAILURE TO PROVIDE COLLEGE ENROLLMENT INFORMATION

In Points II and III, Father claims that, because Andrea failed to give him the notices required by Section 452.340.5 as to her attendance at and completion of courses in higher education, his obligation to pay child support should have abated or there should at least have been no retroactive support ordered.

Generally, child support payments may be terminated when the child on whose behalf they are paid reaches the age of 18. Sec. 452.340.3 RSMo 1994 & Cum.Supp. 1997. The statute provides for the continuation of benefits, however, when the child is still in secondary school or if the child enrolls in an institution of vocational or higher education by the October following graduation from secondary school, if certain attendance, academic and notice requirements set out in Section 452.340.5 are met. At the time that Andrea began college at UMKC in 1997, that subsection stated:

> If when a child reaches age eighteen, he is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend progresses toward completion of said program, until the child completes such program or reaches age twenty-one,

---

1. Father also complains that, during the summer of 1998, Andrea went into the hospital for surgery but he was not told about her condition or her stay in the hospital. Mother admits withholding this information, but testi-

fied that she was respecting Andrea's wishes that Father not be told. Again, while Mother might have volunteered more information. Andrea was 19 years old at that time and had the right to make her own decisions.

whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree and so long as the child enrolls for and completes at least twelve hours of credit each term at an institution of vocational or higher education and achieves grades sufficient to re-enroll at such institution, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs. *To remain eligible for such continued parental support, the child shall submit to each parent a transcript provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.* If the circumstances of the child manifestly dictate, the court may waive the October first deadline for enrollment required by this subsection.

Sec. 452.340.5 RSMo 1994 & Cum.Supp. 1997 (emphasis added).

This statute governed Andrea's entitlement to child support during the Fall 1997 and Winter/Spring 1998 semesters at issue here. Our Supreme Court clarified what information this statute requires the child to send the parent in order to be eligible for support for the first semester of college in *In re Marriage of Kohring,* 999 S.W.2d 228, 233 (Mo. banc 1999). The Court there held:

These provisions contemplate proof of eligibility for parental support on a term-by-term or semester-by-semester basis. There appear to be no reporting requirements for the first semester because the list of reporting requirements is prefaced by the words "To remain eligible for such continued parental sup-

port." The implication is that that portion of the statute pertains only to the second and subsequent terms or semesters. Therefore, eligibility for support during the first semester may be established simply by proof of enrollment....

*Kohring,* 999 S.W.2d at 233.

■ Here, as in *Kohring,* assuming that Mother's evidence was believed, Father was provided with proof of enrollment for Andrea's first semester at UMKC, in that Mother says she forwarded him a copy of the letter from UMKC dated July 21, 1997, which stated that Andrea was registered as a full-time student. Thus, to the extent that the court below found to be satisfied the requirements for Andrea to be eligible for child support during her first semester of college, the evidence supported the court's judgment.

■ *Kohring* noted that the statute imposes substantial additional requirements which must be complied with if a child is to remain eligible for child support during subsequent semesters of college, however, stating:

"To remain eligible ..." for the second semester and each subsequent semester, daughter was required to comply with the specified reporting requirements. Mother admits in her brief before this Court that father was not given the daughter's transcript showing the courses enrolled in, grades, and credits received, until May 1998, and by then, daughter had already completed the Fall 1997 term and had nearly completed the Spring 1998 term. Consequently, while the circuit court was correct in ordering father to pay child support for daughter's expenses for the Fall 1997 term, the court erred in ordering support for the Spring 1998 term.

*Kohring,* 999 S.W.2d at 233–34. In other words, after the first semester, for the child to continue receiving child support, the statute requires the child to provide each parent with a transcript provided by the institution that showed: (1) the

courses enrolled in; (2) the courses completed for each semester; (3) the grades and credits received for each completed course; *and* a transcript from the institution listing for the upcoming semester: (1) the courses enrolled in and (2) the number of credits for each course.

Again, the reasoning in *Kohring* is controlling. Here, as in *Kohring*, Andrea failed to provide to Father, in a timely fashion, a transcript showing the courses in which Andrea had enrolled for the Winter/Spring 1998 semester, or the grades and credits she had received for the Fall 1997 semester. Even if the court below accepted as true Mother's claim that she forwarded Father a letter in February 1998 that confirmed Andrea's enrollment for the Winter/Spring 1998 semester, that letter did not set out the classes or credits she was taking nor did it inform Father as to Andrea's grades and credits for the Fall 1997 semester. And, while Mother says she provided Father with a handwritten note telling him the courses in which Andrea had been enrolled during the Fall 1997 semester and the grades she had received, a handwritten note does not satisfy the statutory requirement that this information be provided through a transcript from the institution itself. This requirement ensures accuracy and avoids the difficulties which would occur if one parent had to rely on the other for accurate information as to courses taken and credits received.[2] Because Andrea failed to comply with the notice requirements of Section 452.340.5 for the Winter/Spring 1998 semester, she was not entitled to receive child support during that semester.

■ Andrea's lack of eligibility for child support during the Winter/Spring 1998 semester did not preclude her from being eligible for child support thereafter. *Kohring* clearly held that:

> Despite daughter's failure to comply with the statute to qualify for support for the Spring 1998 term, father is not relieved of future payments for daughter's educational expenses. To the extent that daughter complies with the statutory preconditions for subsequent terms or semesters, she remains eligible for parental support until she completes her college education or she reaches the age of twenty-two, whichever first occurs.

*Kohring*, 999 S.W.2d at 234. Thus, whether Andrea was eligible for support for the Fall 1998 semester must be determined by assessing whether she met the eligibility requirements then in effect, not by whether she had complied with eligibility requirements for the preceding semesters.

■ Section 452.340.5 was revised effective August 1998 to permit a child to send parents notice in the form of an official document other than a transcript, but required that the notice be sent at the beginning of the next semester. So far as it appears from the record, Father did not receive official notification of Andrea's grades for the Winter/Spring 1998 semester or of the courses for which she registered for the Fall 1998 semester until the court below ordered Mother to provide Father with this information in December 1998. *Kohring* indicates that this was inadequate even under the prior version of Section 452.340.5; it clearly fails to comply with the requirement of the revised statute that notice be sent at the beginning of the semester. Accordingly, Andrea was not entitled to support for the Fall 1998 se-

---

**2.** Because of our resolution of the issues just discussed, we do not reach the question whether an official letter other than a transcript would have been sufficient to allow Andrea to remain eligible under the statute in effect in the Spring of 1998, nor do we address whether notification would be timely under the 1997 statute as interpreted in *Kohring* where, as here, notification was not sent until late in February as to classes enrolled in early in January or as to grades received for classes taken the prior semester. (Of course, if grades for the Fall Semester were not available until the Winter/Spring Semester had already begun, sending them as soon as they were available might well be sufficient, but that did not occur here).

mester. For these reasons, we remand this case with directions to enter an order finding that Father was not obligated to pay child support for the Winter/Spring 1998 or Fall 1998 semesters.

## V. OTHER ISSUES

■ Because this ruling will also affect the retroactive child support which Father was ordered to pay, we remand for reconsideration of that issue. Father also complains that, while the trial court ordered him to receive credit for the amounts he had actually paid to Mother during 1998 in determining his retroactive support obligation, the court failed to make any finding as to the amount of payments he had made and the amount of credit he therefore should receive. We agree that the court's order was insufficiently specific in this regard, and, on remand, the court should specifically determine the amount of credit to which Father is entitled. In determining this issue, the Court should be guided by our opinion herein that Father had no child support obligation for the Winter/Spring and Fall 1998 semesters, and by such cases as *In Re Marriage of Carter*, 4 S.W.3d 562, 566–67 (Mo.App. S.D.1999) (normally, a non-custodial parent's payments made directly to the custodial parent will not be credited against a child support obligation, but an exception will be made if the payments are made directly to the custodial parent "with the express or implied consent of the custodial parent or where compulsion of circumstances makes it necessary"), and *State ex rel. Div. of Family Services v. Isadore*, 893 S.W.2d 872, 875 (Mo.App. W.D.1995) (accord).

■ Father also argues that the trial court erroneously failed to consider income earned by Andrea in determining the amount of child support due her. In support, he cites to *Shiflett*, 954 S.W.2d at 494, in which we stated that income earned by the child shall be considered in determining whether and how much a parent should pay toward college expenses. Here, however, Father cites nothing in the record to support a finding that the court ordered him to pay additional monies intended to take care of Andrea's tuition, room, board, and so forth. Our own review of Mother's Form 14, adopted by the court below, indicates that Andrea obtained sufficient scholarships and loans that Mother's Form 14 listed only $20 per month as her total additional cost for attending UMKC.[3] The rest of the $698.40 per month in support which Father was ordered to provide is simply the amount which he would owe based on Mother's and Father's income and Andrea's living expenses under Form 14 without considering any special college costs. We cannot say that the trial court abused its discretion in deciding to allow Andrea $20 per month in child support to cover her college expenses, and in not otherwise reducing her support by the amounts she earned working to provide herself with spending money during school. Accordingly, we reject this point.

■ Finally, Father argues that the trial court erred in awarding Mother attorney's fees. The award of fees is governed by Section 452.355.1, which states:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties

---

**3.** In a separate Form 14, upon which the court relied to order payment of child support retroactively for the period from January 1, 1998 to December 17, 1998, the additional cost for attending UMKC was calculated to be $181.86 per month, for at that point daughter had not received any scholarships and grants. This increment to Father's child support obligation was reduced by the court to $20.00 for the period subsequent to December 17, 1998

because thereafter daughter had been awarded scholarships and grants for her education. However, because we determined above that Father had no obligation to pay any child support during daughter's Winter/Spring and Fall 1998 semesters we need not decide whether the trial court erred in failing to consider income, if any, earned by Andrea during that period.

during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name. Sec. 452.355.1 RSMo Cum.Supp.1998. "On appeal, father bears the burden of proving that the award constituted an abuse of discretion." *Kohring*, 999 S.W.2d at 234.

Father concedes that his superior financial resources were a factor for the court below to consider, but he argues that this factor was outweighed by the fact that he tried to resolve the matter prior to going to court and requested and participated in mediation prior to trial, while at the same time being denied visitation and medical and college information. We do not find that the trial court abused its discretion in ordering Father to pay the indicated attorney's fees. While the trial court may not consider income to the exclusion of other factors, it is clear from the record that Father is in a much better financial situation than Mother. Mother's Form 14 shows Father's average monthly gross income is $5,538.00, while Mother's is $1,365.00. Additionally, Mother has been diagnosed with Systemic Lupus, is totally disabled, and, consequently, is receiving Social Security. Further, as discussed above, we do not find that Mother improperly denied Father visitation.

Finally, while we have found merit to Father's claim that he was not properly given notice as to Andrea's classes and grades, this in itself would not preclude an award of attorney's fees. To the contrary, although *Kohring* also found that father did not owe child support for a semester during which he did not receive required notice of his daughter's grades and classes,

*Kohring* nonetheless held that the trial court did not abuse its discretion in awarding mother attorney's fees where the record showed that father had a substantial income and that mother's income was reduced due to illness. *Kohring*, 999 S.W.2d at 234. Here, too, while we disallowed part of Mother's claim, other aspects of her claim were proper, and it was within the discretion of the trial court, in considering all relevant factors mentioned in Section 452.355.1, to determine that Mother was entitled to attorney's fees.

For all of these reasons, we affirm that part of the court's decision finding that Mother did not unreasonably interfere with visitation and was entitled to attorney's fees, as well as the finding that Andrea was entitled to support for the Fall 1997 semester, but reverse the award of support for the next two semesters due to noncompliance with the notice requirements of Section 452.340.3(5), find the court erred in failing to be specific as to the credit to which Father was entitled, and remand for further proceedings consistent with this opinion.

Judge ROBERT G. ULRICH and Judge JAMES M. SMART, Jr. concur.