**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1435
_____

GIOVANNI LOPRESTI;
LARNADO PITTMAN;
NINO CALABRESE

v.

CAROLE A. JOHNSON, in her official capacity as
Commissioner and within the scope of the Department of Human Services,
Division of Family Development, Office of Child Support Services;
NATASHA JOHNSON, in her official capacity as Director and Assistant
Commissioner and within the scope of her authority and office of the
Department of Human Services, Division of Family Development, Office of
Child Support Services; GURBIR S. GREWAL, in his official capacity as
Attorney General of the State of New Jersey

Larnado Pittman,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-20-cv-06696)
District Judge:  Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 13, 2023
_____

Before: PORTER, FREEMAN, and FISHER, *Circuit Judges*

(Opinion filed: October 19, 2023)

_____

OPINION*

_____

FREEMAN, *Circuit Judge*.

Under New Jersey's child support law, a noncustodial parent may be ordered to provide financial support for a child past the age of majority to attend college. Larnado Pittman was subject to such an order and challenged the law on equal protection and due process grounds. We will affirm the dismissal of his complaint.

I

In New Jersey, a noncustodial parent's obligation to pay child support generally ends when the child turns age 19. N.J. Stat. Ann. § 2A:17-56.67a. But a post-majority support law provides exceptions to that rule. *Id.* § 2A:17-56.67b(1). It permits courts to approve the custodial parent's request to continue child support beyond the child's nineteenth birthday. One permitted basis for such a request is the child being a full-time college student. *Id.* § 2A:17-56.67b(1)(b) (permitting requests for continued child support when "the child is a student in a post-secondary education program and is enrolled for the number of hours or courses the school considers to be full-time attendance during some part of the academic year").[1] When a court grants a request to

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] At the time of Pittman's post-majority support order, the statute required that a child be enrolled in post-secondary education "during some part of each of any five calendar months of the year." N.J. Stat. Ann. § 2A:17-56.67a (2016).

continue support, the obligation ends by operation of law when the child turns age 23. *Id.* § 2A:17-56.67e.

This case stems from Larnado Pittman's child support obligations under New Jersey's post-majority support law.[2] After Pittman and his former spouse, Rosemarie Wells, divorced, Pittman began to make child support payments as a noncustodial parent. As their daughter approached age 19, Wells requested continuation of Pittman's child support obligations based on their daughter's full-time enrollment in college. In April 2020, the state court granted the request and entered the Post-Majority Support Order ("PMSO") requiring Pittman to pay child support until May 5, 2023. Pittman filed a motion for relief from the obligation, as permitted by the statute. *Id.* § 2A:17-56.67c. There is no record of a ruling on Pittman's motion.

Pittman then filed suit in federal court against various New Jersey officials in their official capacities. He sought declaratory and injunctive relief against the enforcement of the post-majority support law.[3] The crux of his operative complaint is that the post-majority support law violates the Equal Protection and Due Process Clauses of the United States Constitution's Fourteenth Amendment and the corresponding provisions of the New Jersey Constitution. He asserts that the post-majority support law denies divorced,

---

[2] Despite this case's caption, Pittman is the only named plaintiff in the operative Second Amended Complaint because former plaintiffs Giovanni LoPresti and Nino Calabrese voluntarily withdrew their claims.

[3] Pittman also purports to challenge a provision of New Jersey's alimony statute, N.J. Stat. Ann. § 2A:34-23a(5). That provision may be relevant to the amount or duration of Pittman's child support obligations, *see Gac v. Gac*, 897 A.2d 1018, 1022 (N.J. 2006), but it is not relevant to the constitutionality of his support obligations.

3

non-custodial parents equal protection by requiring them to finance their children's college education past the age of majority when no such state-imposed obligation exists for married, custodial parents. He also asserts that the law violates substantive due process because it infringes upon the fundamental right of parents to control the upbringing and education of their children. Finally, he contends that, because the post-majority support law is unconstitutional, it is void under *Cooper v. Aaron*, 358 U.S. 1 (1958).

Defendants (collectively, "the State") moved to dismiss Pittman's amended complaint. The District Court dismissed Pittman's federal constitutional claims for failure to state a claim and declined to exercise supplemental jurisdiction over the state law claims. *Pittman v. Grewal*, No. 20-06696, 2022 WL 489459, at *6–14 (D.N.J. Feb. 17, 2022). Pittman timely appealed.[4]

While this appeal was pending, Pittman's support obligations under the PMSO expired. The State then moved to dismiss the appeal as moot. The parties and Court-appointed amicus curiae have briefed the merits and the mootness question.[5]

II

The District Court had jurisdiction under 28 U.S.C. § 1331. At the outset of this appeal, it was undisputed that we had jurisdiction to review the District Court's final

---

[4] On appeal, Pittman does not challenge the District Court's decision not to exercise supplemental jurisdiction over the state law claims.

[5] We thank Court-appointed amicus curiae Stephen F. Raiola for ably discharging his duties in this matter.

order under 28 U.S.C. § 1291. But the State now asserts that a change in circumstances has rendered this appeal moot, divesting us of jurisdiction. We always have jurisdiction to determine our own jurisdiction, *United States v. Kwasnik*, 55 F.4th 212, 215 (3d Cir. 2022), and our review is plenary, *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 665 (3d Cir. 2016).

### III

The State argues that this case became moot when Pittman's support obligations expired. We disagree. It is undisputed that Pittman has a continuing obligation to pay his past-due support under the PMSO. So the PMSO has "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). And even though Pittman does not seek to recoup past child support payments, he stands to benefit from a favorable ruling because it could lead him to be relieved from existing financial obligations under the PMSO, including obligations that are past due. *Cf. Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 456–57, 457 n.2 (3d Cir. 2019) (holding that a claim for declaratory and injunctive relief regarding the garnishment of wages was not mooted by the vacatur of the garnishment order where the State had a levy on the plaintiff's bank account). We, therefore, do not find Pittman's claims to be moot.[6]

The State also contends that this appeal should be dismissed under the doctrine of unclean hands. It argues that Pittman engaged in inequitable conduct in failing to make

---

[6] In its submissions about mootness, the State seeks to revive a *Rooker-Feldman* doctrine argument that it made in the District Court. But the State expressly waived that argument in its opening brief, Appellees' Br. at 8 n.4, so we will not address it.

timely child support payments, and he should not be permitted to use that conduct to "thwart the mootness doctrine." Appellees' 5/24/23 Ltr. at 4.

"The equitable doctrine of unclean hands applies when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001). Courts generally address the unclean hands doctrine when deciding whether to grant injunctive relief—not when addressing the threshold question of whether a matter is moot. *See, e.g.*, 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2946 (3d ed. 2023 update). But we need not decide whether it is appropriate to address unclean hands at this stage because Pittman's failure to make timely child support payments does not resemble the type of unconscionable conduct courts have found to trigger the doctrine of unclean hands. *See Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245 (1933) (noting that the unclean hands doctrine bars relief to one "who has acted fraudulently, or who by deceit or any unfair means has gained an advantage"); *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598–600 (3d Cir. 1972) (applying the unclean hands doctrine to bar equitable remedies in patent infringement case in which the plaintiff obtained the patents in question through misrepresentation). So we decline to exercise our discretion to apply the doctrine here. *See Monsanto*, 456 F.2d at 598.

IV

Our review of a district court's decision to grant a motion to dismiss is plenary. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). "To survive a motion to

6

dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (quotations and citations omitted). We accept the veracity of the allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.*

## A. Equal Protection

Under the Equal Protection Clause, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim for an equal protection violation, Pittman must plausibly allege (1) that the post-majority support law intentionally discriminates against a reasonably identifiable group and (2) that such differential treatment is not legally justified. *Hassan v. City of New York*, 804 F.3d 277, 294 (3d Cir. 2015), *as amended* (Feb. 2, 2016). The State acknowledges that the post-majority support law facially "distinguish[es] on the basis of marital or custodial status." Appellees' Br. at 18–19. So we focus on the second element—whether the differential treatment is justified under the relevant standard of scrutiny.

Neither the Supreme Court nor this Court has addressed the level of scrutiny to apply to laws that treat parents differently based on their marital or custodial status.[7] And to our knowledge, neither has any other federal court of appeals. Pittman does not

---

[7] The Supreme Court's line of cases subjecting legitimacy-based classifications of children to intermediate scrutiny is not implicated here, as Pitman challenges differential treatment of parents. *See United States v. Mayea-Pulido*, 946 F.3d 1055, 1065 (9th Cir. 2020) ("[T]o our knowledge the [Supreme] Court has never applied heightened scrutiny to classifications based on parental marital status outside the legitimacy context.").

7

advocate for a particular level of scrutiny, and the State and amicus curiae argue that the District Court correctly applied rational basis review.

We agree that rational basis review is the appropriate standard because neither marital nor custodial status is a suspect or quasi-suspect classification.[8] *See Hassan*, 804 F.3d at 298; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (listing suspect and quasi-suspect classifications). Under this standard, we ask whether there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Real Alts., Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 348 (3d Cir. 2017) (quotations and citation omitted). The challenged law enjoys a "presumption of validity," and the challenging party "must negate every conceivable justification for the classification in order to prove that the classification is wholly irrational." *Id.* (quotations and citation omitted).

Pittman has not met his burden of negating all conceivable justifications for the State's differential treatment of groups of parents. Our inquiry begins and ends with the first justification the State asserts: that the post-majority support law was intended to further the government's interest in promoting access to higher education among New Jersey's youth. We conclude (and Pittman does not challenge) that this is a legitimate government interest. *See Meyer v. Nebraska*, 262 U.S. 390, 400 (1923) ("The American

---

[8] State appellate courts have reached the same conclusion about divorced, unmarried, and legally separated parents. *See, e.g.*, *In re Marriage of McGinley*, 19 P.3d 954, 960 (Or. App. 2001); *In re Marriage of Kohring*, 999 S.W.2d 228, 232 (Mo. 1999).

people have always regarded education and acquisition of knowledge as matters of supreme importance which should be diligently promoted.").

Pittman has not rebutted the State's assertion that the law is rationally related to that purpose. The State asserts that the post-majority support law supports children who strive to secure a college degree despite lack of support from divorced parents. It asserts that children of divorced parents have more difficulty paying for college than children with married parents. And it points to the law's requirement that courts consider factors including the "[n]eeds of the child" and "economic circumstances of each parent" when determining the support amount. N.J. Stat. Ann. § 2A:34-23a(1)–(10). Pittman contends that the law is too narrow to meet the State's purpose because it does not help children of married parents. But this does not render the law wholly irrational. *Real Alts.*, 867 F.3d at 348; *see also Heller v. Doe by Doe*, 509 U.S. 312, 324 (1993) ("A statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective." (cleaned up)). Because Pittman failed to carry his burden, his equal protection claim was properly dismissed.

*B. Substantive Due Process*

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has held that the Due Process Clause has a substantive component. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 856 (1998) (Kennedy, J., concurring). Substantive due process "specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the

9

concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (cleaned up).

In his substantive due process claim, Pittman argues that the post-majority support law infringes on noncustodial parents' fundamental rights to make child-rearing decisions and to control the education and upbringing of their children. He brings a facial challenge, which attacks "a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). To succeed, he must "establish that no set of circumstances exists under which [the post-majority support law] would be valid, or that the [law] lacks any plainly legitimate sweep." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)).[9]

Neither the Supreme Court nor this Court has addressed whether a parent's liberty interests encompass the right to refuse post-majority child support, whether that support is designated for post-secondary education or other purposes.[10] So our first task is to determine the level of scrutiny to apply. We apply rational basis review in substantive due process challenges unless the challenged statute "abridges certain fundamental rights and liberty interests." *Heffner v. Murphy*, 745 F.3d 56, 79 (3d Cir. 2014) (quotation and

---

[9] Although Pittman's second amended complaint contains one stray use of the phrase "as applied," it contains no facts supporting an as applied challenge. And he has not pursued an as-applied challenge on appeal. *See, e.g.*, Appellant's Br. at 5 ("Appellant submits N.J.S.A. 2A:34-23 (A)(5) as facially applied, violates the Equal Protection Clause.").

[10] Several state courts have held that post-majority child support laws do not burden a fundamental right. *See In re Marriage of Kohring*, 999 S.W.2d at 232–33 (collecting cases).

citation omitted).  When a statute abridges fundamental rights and liberty interests, we apply strict scrutiny.  *Alexander v. Whitman*, 114 F.3d 1392, 1403 (3d Cir. 1997).

Determining the level of scrutiny "requires us to identify the alleged due process right at issue carefully and precisely."  *McCurdy v. Dodd*, 352 F.3d 820, 826 (3d Cir. 2003); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.").  We are mindful that the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Collins*, 503 U.S. at 125.

Preliminarily, Pittman frames the alleged right too broadly.  Precisely defined, Pittman asserts a parental right to decide whether to fund the post-secondary education of his or her adult child.  We conclude that is not a fundamental right.

Although parents have certain fundamental rights regarding the care, custody, and control of their children, *see Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (collecting cases), those rights are not boundless.  For instance, despite parents' fundamental liberty interest in "direct[ing] the upbringing and education of children under their control," *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925), the Supreme Court has observed that a parent has "no legitimate right and certainly no liberty interest in avoiding financial obligations to his natural child that are validly imposed by state law," *Rivera v. Minnich*, 483 U.S. 574, 580 (1987).  And we have observed that "the framework [the Supreme Court] established in [its] substantive due process cases . . . limited the parental liberty

11

interest to decisionmaking regarding the care, custody, and control of *minor* children." *McCurdy*, 352 F.3d at 827 (emphasis added); *see also Parham v. J. R.*, 442 U.S. 584, 602 (1979) ("Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course.").

In *McCurdy*, we reasoned that parents' fundamental right "to make critical child-rearing decisions concerning the care, custody, and control of minors . . . must cease to exist at the point at which a child begins to assume that critical decisionmaking responsibility for himself or herself." 352 F.3d at 829. In that case, we held that "the fundamental guarantees of the Due Process Clause do not extend to a parent's interest in the companionship of his independent adult child." *Id.* at 830. And we have never extended parents' fundamental liberty interests to decisions about their adult children. In the absence of guideposts from the Supreme Court, and mindful of our responsibility to exercise judicial self-restraint, we decline to hold that parents have a fundamental right to decide whether to fund the post-secondary education of their adult children. We cannot conclude that this purported right is "objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg*, 521 U.S. at 720–21 (cleaned up).[11] So we will apply rational basis review.

---

[11] Even if Pittman had asserted a fundamental right, he failed to show (as he must in bringing a facial attack) that "there is no set of circumstances" under which the post-majority support law could be applied constitutionally. *United States v. Mitchell*, 652 F.3d 387, 415 (3d Cir. 2011). The "mere possibility" of such a scenario cannot support a

At this point, our analysis converges with the equal protection claim. As discussed above, Pittman has not plausibly alleged that the law bears no rational relationship to the State's legitimate purpose. So the District Court properly dismissed his substantive due process claim.

*C. Cooper v. Aaron*

Pittman's claim that the post-majority law is void under *Cooper v. Aaron*, 358 U.S. 1 (1958), depended on his assertions that the law violates the Constitution. So it was properly dismissed.[12]

\*     \*     \*

For the foregoing reasons, we deny the State's motion to dismiss the appeal and we will affirm the District Court's judgment.

---

facial challenge. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 455 (2008).

[12] We decline amicus curiae's invitation to read into Pittman's complaint a claim that the Superior Court "discriminated against federal law" in refusing to address his constitutional objections. Amicus Curiae Br. at 49. Neither Pittman's complaint, liberally construed, nor his briefing on appeal demonstrates his intent to advance such a claim.