Linda Elizabeth SMITH, Appellant–
Respondent,

v.

Kirby Lynn WHITE, Respondent–
Appellant.

Nos. WD 61737, WD 61777.

Missouri Court of Appeals,
Western District.

Aug. 26, 2003.

As Modified Sept. 30, 2003.

See also 67 S.W.3d 742.

Grace S. Day, St. Joseph, MO, for Appellant/Respondent.

James A. Nadolski, St. Joseph, MO, for Respondent/Appellant.

Before PAUL M. SPINDEN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Ms. Linda Smith appeals from the trial court's judgment modifying her child support obligation and ordering her to pay attorney's fees. Mr. Kirby White cross-appeals from the trial court's judgment emancipating his eldest son for failing to successfully complete the number of college credits necessary to remain eligible for child support.

Ms. Smith raises seven points on appeal. Six of her points address the payment of child support. Of these points, three involve the trial court's Form 14 calculation of child support, one relates to Ms. Smith's claim to a refund for child support paid when the eldest son was ineligible for support due to his failure to furnish a college transcript, one concerns Ms. Smith's desire to pay college expenses directly to the younger son's college, and one relates to Ms. Smith's desire to pay child support directly to the younger son. The final point addresses the trial court's award of attorney's fees to Mr. White for breach of the parties' marital settlement agreement.

Mr. White raises one point in his cross-appeal. He contends that the trial court erred in declaring his eldest son emancipated under section 452.340.5 [1] for failure to pass twelve hours of college courses during the spring 2001 semester, as required to remain eligible for child support.

We reverse the judgment of the trial court as it pertains to the award of attorney's fees and remand so the trial court can develop the record on that issue. In all other respects, we affirm the judgment of the trial court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties divorced in 1996. They have two children. At the time of oral argument, the eldest child, Scott, was twenty-one years old and a student at the University of Missouri in Columbia. The youngest child, Christopher, was nineteen years old and a student at Northwest Missouri State University in Maryville.

In its original dissolution decree, the trial court awarded joint legal custody to both parents and awarded primary physical custody to Ms. Smith. In a later modification proceeding, the court transferred primary physical custody to Mr. White and ordered Ms. Smith to pay $1,157 in child support beginning in January 1997. While the modification judgment transferred responsibility to Mr. White for providing

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

Scott and Christopher with health insurance coverage, it did not disturb the provision of the original dissolution decree that required Ms. Smith to pay seventy-five percent of all uninsured medical expenses.

On May 17, 2000, Mr. White filed a motion for contempt based upon Ms. Smith's failure to pay her share of certain orthodontic expenses. Mr. White also filed a motion to modify, requesting that the court increase Ms. Smith's child support obligation because of Scott's pending college attendance. Ms. Smith filed a counter-motion to modify, requesting that the trial court decrease her child support obligation due to a decrease in her income and an increase in Mr. White's income.

The trial court entered a contempt judgment in favor of Mr. White for $6,285, which represented the full amount of the orthodontic expenses at issue. The trial court also recalculated Ms. Smith's child support obligation after preparing its own Form 14 and increased her obligation to $1,438 per month.

Ms. Smith appealed. *See Smith v. White,* 67 S.W.3d 742 (Mo.App. W.D.2002) (*Smith I*). In *Smith I,* this court affirmed the modification of Ms. Smith's child support obligation. *Id.* at 745–46. But we concluded that the trial court erred when it awarded Mr. White the full amount of the children's orthodontic expenses as a sanction for Ms. Smith's contempt because Mr. White failed to adduce evidence showing that the amount awarded in excess of Ms. Smith's share of those expenses "was somehow compensatory or related to the damages" that he suffered. *Id.* at 747. Accordingly, we remanded the case "to allow the trial court to reconsider the monetary sanction and to formulate that element of the judgment in a manner consistent with the principles of civil contempt." *Id.*

Following remand, Ms. Smith filed an amended motion to modify the trial court's judgment. In her amended motion, she asked that the trial court declare Scott to be emancipated and ineligible for child support because of his failure to furnish her with college enrollment documentation for the Spring 2001 semester and because of his failure to pass twelve hours of courses during the spring 2001 semester, as required by section 452.340.5. She requested credit for child support payments that she had made since January 1, 2001. She further requested that the trial court reduce her child support obligation and "order each party to equally pay the college expenses for Christopher ... in accordance with the statute, with said payments to be paid by each party directly to the college or university upon receipt of statement for costs." She further requested that the trial court allow her to make support payments directly to Christopher.

Mr. White filed a counter-motion for modification of child support, arguing that an increase in Scott's college costs and Christopher's pending college attendance justified an increase in Ms. Smith's child support obligation.

In its amended judgment pertaining to these matters, the trial court ruled that Scott was emancipated as of June 1, 2001, based upon this court's decision in *Lombardo v. Lombardo,* 35 S.W.3d 386 (Mo. App. W.D.2000). The trial court determined that Ms. Smith was entitled to a credit of $8,736 for overpayment of child support between June 1, 2001, and June 1, 2002. The trial court further modified Ms. Smith's child support obligation to $1,302 per month to be paid through the Family Support Payment Center.

The trial court also ruled that Ms. Smith "remains obligated to pay the balance of her proportionate share of the orthodontic bill in the amount of $4,463.75."

Finally, the trial court ordered Ms. Smith to pay Mr. White's attorney's fees in the amount of $4,850. The attorney's fee award was based upon a provision in the parties' marital settlement agreement providing for "reasonable attorney's fees to be paid by the party breaching the agreement." The trial court found that Mr. White had incurred $850 in attorney's fees "for pursuing the original contempt action," "an additional $3,500.00 in attorney's fees in successfully defending that Judgment in the Court of Appeals," and $1,500 in attorney's fees following remand, "of which $500.00 is attributable to the issue of contempt on remand."

## II. STANDARD OF REVIEW

In this court-tried civil case, we will affirm the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Smith I,* 67 S.W.3d at 745.

## III. LEGAL ANALYSIS

For ease of analysis, we have not followed the order of Ms. Smith's points relied on. We have grouped all six of the points relating to child support and college expenses together. We have further grouped all of the points relating to the Form 14 calculation together. We have then addressed her remaining point on attorney's fees and Mr. White's cross-appeal.

### A. Inclusion of Insurance Costs for Two Dependents (Point I)

■ In her first point, Ms. Smith contends that the trial court erred by including the cost of insurance for two dependents in its Form 14 calculation, since Scott is now emancipated and Ms. Smith is no longer obligated to pay for his support. Ms. Smith concedes that she has failed to

preserve this first point for appellate review. She requests that we review the point for plain error. In our discretion, we may consider "[p]lain errors affecting substantial rights" when we find that "manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). We rarely review for plain error in civil cases, however. *Roy v. Mo. Pac. R.R. Co.,* 43 S.W.3d 351, 363–64 (Mo.App. W.D.2001). Even then, the appellant may not invoke plain error "to cure the mere failure to make proper and timely objections." *Id.* (quoting *Guess v. Escobar,* 26 S.W.3d 235, 241 (Mo.App. W.D.2000)).

This case involves "the mere failure to make proper and timely objections" because Ms. Smith submitted a Form 14 worksheet listing the same amount for health insurance costs—$227 per month—as the trial court listed in its own Form 14. Far from objecting to this amount, she embraced it. Accordingly, we decline to review this point for plain error.

### B. Failure to Include Mr. White's Insurance Benefits as Gross Income Under Form 14 (Point V)

■ Ms. Smith asserts that the trial court erred in its Form 14 calculation by failing to include as gross income to Mr. White $286 in medical and dental insurance premiums paid by his employer.

For purposes of computing the presumed child support amount in Form 14, "income" consists of "a financial benefit or money received by a parent that could have a positive impact on the parent's ability to support the parent's children." DIRECTIONS, COMMENTS FOR USE AND EXAMPLES FOR COMPLETION OF FORM NO. 14, Line 1: *Gross Income,* A. COMMENT. The Directions further specify that "significant employment-related benefits *may* be included, in whole or in part, in 'gross income' in appropriate circumstances." *Id.,*

*Line 1: Gross Income, DIRECTION* (emphasis added). Employer-provided insurance benefits fall within this category. *Farr v. Cloninger*, 937 S.W.2d 760, 764 (Mo.App. S.D.1997) (trial court did not err in considering employer-provided insurance benefits as part of father's gross income for Form 14 purposes).

Contrary to Ms. Smith's assertion, however, the trial court is not obligated to include these benefits as part of a parent's gross income in every case. "The use of the term 'may' in connection with the Directions for Completion of Form 14 indicates the existence of discretion in the trial court." *Id.* at 763 (citing *Schubert v. Tolivar*, 905 S.W.2d 924, 929 (Mo.App. E.D. 1995)). In all of the cases cited by Ms. Smith, the appellate courts concluded that the trial court properly included such benefits as part of a parent's gross income, but they did not mandate the inclusion of such benefits. *See Farr*, 937 S.W.2d at 763–64 ("[W]e are unable to conclude that the trial court erred in considering the insurance benefits as a part of Father's income for Form 14 purposes."); *Wofford v. Wofford*, 991 S.W.2d 194, 197 (Mo.App. W.D.1999) (declaring that *Farr* "held that it was not error to consider insurance coverage furnished to an employee as part of Form 14 income because it saved him an expense he would otherwise incur" and concluding that trial court did not err by including such coverage in calculating father's income); *Buckner v. Jordan*, 952 S.W.2d 710, 712 (Mo. banc 1997) ("Per diem payments alleged by a parent to be

expended for employment-related expenses are an employment-related benefit. If significant, those benefits may be included in gross income for the presumptive child support calculation."); *Fulton v. Adams*, 924 S.W.2d 548, 554 (Mo.App. W.D.1996) (in a case involving pre-tax flex plan benefits which could be used to offset the cost of parent's health insurance, trial court "did not err in *choosing* to count this employment-related benefit as income.") (emphasis added). Ms. Smith cites no authority mandating the inclusion of such benefits. Nor does she explain why the trial court abused its discretion in choosing not to include them here. Point denied.

**C. Failure to Rebut the Presumed–Correct Child Support Amount as Unjust or Inappropriate (Point II)**

■ To determine a proper child support amount, the trial court employs a two-step process. *Searcy v. Searcy*, 85 S.W.3d 95, 99 (Mo.App. W.D.2002). In step one, the trial court determines for the record the presumed-correct child support amount using Form 14. *Id.* In step two, the trial court then considers whether to rebut that amount as "unjust or inappropriate" after considering all relevant factors. *Id.* at 100. The party seeking to rebut the presumed-correct child support amount bears the burden of showing that it is unjust or inappropriate. *Id.*[2]

Within this framework, the trial court may address college expenses in step one or step two. It may address these expenses in step one by including them in

---

**2.** Our review of this point requires us to apply the *Murphy v. Carron* standard and an abuse of discretion standard. In reviewing an award of child support, we review the award, in light of the trial court's application of the two-step procedure described above, to determine whether it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Conrad v. Conrad*, 76 S.W.3d 305, 308 (Mo.App. W.D.2002). "After reviewing and determining that the trial court's application of the [two-step] procedure passes the *Murphy v. Carron*, 536 S.W.2d 30 (Mo. 1976) standard, we then review for an abuse of discretion with respect to the trial court's rebuttal review of its PCSA calculation." *Id.*

the Form 14 calculation. *See Crews v. Crews,* 949 S.W.2d 659, 668 (Mo.App. W.D. 1997). Or it may address them in step two by using them to rebut the Form 14 amount as unjust or inappropriate under the circumstances and then adding an appropriate amount for college expenses. *Id.* The current version of Form 14 also recognizes a third possibility: entering "a separate order of support for post-secondary educational expenses in lieu of including them in the trial court's Form 14 calculation or rebutting the Form 14 [amount as unjust or inappropriate]." *Ricklefs v. Ricklefs,* 39 S.W.3d 865, 878 (Mo.App. W.D.2001).

In this case, the trial court addressed college expenses in step one by including them in its Form 14 calculation. Ms. Smith does not argue that the trial court inappropriately included the cost of college expenses in calculating the Form 14 amount. Instead, she contends in this point that the trial court should have rebutted the Form 14 amount as unjust or inappropriate because the Form 14 amount includes duplicated expenses and because that amount is contrary to the evidence regarding Christopher's actual needs.

In its Form 14 worksheet, the trial court determined that the proper child support amount for Christopher is $1,834 per month, $701 of that amount constituting college expenses.[3] Based upon the parents' respective incomes, the trial court ordered Mr. White to pay $532 of the Form 14 amount and ordered Ms. Smith to pay $1,302 of that amount.

Ms. Smith first contends that the Form 14 amount is "unjust or inappropriate" because it counts the cost of Christopher's room and board twice: once in the basic child support amount (Form 14, line 5) and

again in the line item for college expenses (Form 14, line 6e).

We agree with Ms. Smith that the trial court generally should be mindful of the potential for duplicated expenses when awarding child support. *See, e.g., DeArriba v. DeArriba,* 100 S.W.3d 134, 138–39 (Mo.App. E.D.2003); *Gordon v. Gordon,* 924 S.W.2d 529, 536 (Mo.App. W.D.1996).

But Ms. Smith has not met her burden to show that the award is unjust or inappropriate here as a result of such duplication. Although Christopher's monthly college expenses include room and board when he lives at school, those expenses do not reflect the costs incurred when he lives with his father during the summer, over school breaks, and on occasional weekends. Nor do they include other miscellaneous expenses. *Cf. Selter v. Selter,* 982 S.W.2d 764, 766 (Mo.App. E.D.1998) (acknowledging that custodial mother's need for child support would decrease to the extent that college would furnish meals for child while he lived at school, but recognizing that "Mother must still provide a home for [the child] on weekends and his needs for clothing, school supplies, recreation, car insurance and maintenance and similar expenses will be undiminished and, perhaps increased.").

Although Ms. Smith argues that her child support obligation should decrease to account for duplicated variable expenditures when Christopher is away at college, we have previously rejected such an argument. *See Schriner v. Edwards,* 69 S.W.3d 89 (Mo.App. W.D.2002). In *Schriner,* father urged that the trial court "failed to adjust one of the minor children's duplicated variable expenditures which vary directly with the amount of time he spends with [the mother], which

---

**3.** The $701 monthly amount is evidently based upon the trial court's separate finding that Christopher's annual college expenses equal $8,418. $8,418 ÷ 12 = $701.50.

represent 38% of the basic child support amount...." *Id.* at 95. From father's point, this court assumed that he was arguing "that the trial court failed to consider that since [the child] is away at college, Mother is not incurring his variable expenditures and, thus, the trial court erred in not reducing [the child's] portion of the child support by 38%." *Id.*

Rejecting father's argument, the court said:

> The assumption regarding variable expenditures relates to the circumstances that arise when one parent has an extended visitation and there is a need to adjust the presumed child care amount because the non-custodial parent incurs food and other variable costs of the child. Father cites no cases, which state that the court must apply the 38% reduction for variable expenses when a child is at an institution of higher learning. Rather, he cites cases only for the proposition that the child support must be reasonable and necessary; is not to provide an accumulation of capital; and the amount must be balanced against the parent's ability to pay and the family's standard of living. The trial court here made a specific finding that there was no evidence of accumulation of capital, and that he was ordering the higher child support specifically because the children had the right to enjoy the higher standard of living they would have enjoyed but for the divorce.

*Id.*

Moreover, while some of the expenses undoubtedly vary depending upon Christopher's residence, other expenses remain the same regardless of where he lives; Ms. Smith concedes that expenses for things such as clothing, car insurance, car maintenance, health insurance, and housing remain the same whether Christopher lives with his father or at school.

Apart from any duplication of expenses, Ms. Smith further contends that the child support award is simply contrary to the evidence regarding Christopher's actual needs. Ms. Smith pays $805 per month in child support for Christopher in addition to her share of college expenses. To look at it another way, Christopher receives $1,133 in support from both parents each month on top of the payment of his college expenses. Ms. Smith contends that these amounts greatly exceed Christopher's non-college related expenses.

But the record belies Ms Smith's contention. While Mr. White testified that Christopher's non-college related expenses would be the same as Scott's, Mr. White could not confirm what Scott's monthly expenses are:

Q (By Ms. Day): Would you say it'd be fair to say that you do not spend $400 to $500 on Scott while he's at school, a month?

A: You mean extra? Above and beyond just hand him money? Is that what you mean?

Q: Yeah, extra money. Extra expenses.

A: I would say that's fair. I don't know how—I have no idea. I don't know.

Q: You don't have any idea?

A: No. Like I said, it's just a 20 here, 50 there.

As this portion of the transcript demonstrates, Mr. White initially appeared to confirm an amount, but then decided that he did not know the answer to the question posed by Ms. Smith's attorney.

Ms. Smith further contends that Christopher completely disavowed any need for support beyond the payment of his college expenses. Again, however, the transcript

of Christopher's testimony supports a different conclusion:

> Q: And you think that if the Court were to order that you receive some amount of child support in addition to your mother contributing to the college expense that you could handle $200 or $300 to pay your own bills?
>
> A: I wouldn't really have too many of my own bills. I'd have my own money from working. I really wouldn't need it.
>
> Q: Oh, so you don't need any other money, is that it?
>
> A: That's correct.
>
> Q: Okay. So all you're concerned about then, as I understand it, is to have the college education taken care of, is that right, the expense for college?
>
> A: I guess so.
>
> Q: And the other expenses you feel you have sufficient amount yourself.
>
> A: *Well, I couldn't pay for my bills when I go back home. I mean, when I'm at college I have money from work that I've saved up for expenses like food and things on my own, but when it comes to paying bills like gas and things like that, I would need money because—I wouldn't personally because I'm not paying the bills, those aren't sent to me.*
>
> Q: Okay. But if the bills were sent to you, you'd be able to handle it and pay for them, would you not?
>
> A: *With the support of my mom.*

> Q: And if that support were sent directly to you, you could pay your bills and buy your gas and those kinds of things, couldn't you?
>
> A I'd hope so.

(emphasis added)

As this portion of the transcript demonstrates, Christopher did not say that he can support himself; he said only that he does not receive the bills, but that if he did receive the bills, he could pay those bills "[w]ith the support of my mom."[4] Given that Ms. Smith had the burden to show that the trial court should deviate from the Form 14 amount, she has not established that the trial court should have rebutted the presumed-correct child support amount as unjust or inappropriate. Point denied.

### D. Scott's Failure to Furnish a College Transcript (Point IV)

Ms. Smith argues that Scott's failure to furnish her with a college transcript at the beginning of the spring 2001 semester made him ineligible for child support during that semester and, therefore, entitles her to additional credit for the child support that she previously paid during the spring 2001 semester.

Ms. Smith acknowledges that this court recently rejected a similar argument in *Rogers v. Rogers*, 87 S.W.3d 368 (Mo.App. W.D.2002). In that case, this court recog-

---

4. In her second point, Ms. Smith also contends that Christopher earned $4,000 from a summer job and that he would continue to work part time while in school. The trial court should consider the income earned by a child in determining whether and how much a parent should pay toward college expenses. *See Morton v. Myers*, 21 S.W.3d 99, 108 (Mo. App. W.D.2000); *Shiflett v. Shiflett*, 954 S.W.2d 489, 494 (Mo.App. W.D.1997) (in determining proper amount for college expenses, court should consider, among other things, whether the child is self-supporting or not). The portion of the transcript that Ms. Smith cites does not indicate how much money Christopher earned. It simply records Mr. White's statement that Scott and Christopher would "help with their expenses." In fact, when Ms. Smith's attorney asked Christopher if he had earned "around $4,500 last year," Christopher responded, "I couldn't say exactly, I don't know." He further testified that he earned $5.35 per hour from a job at a movie theater.

nized that a child's failure to furnish a parent with a transcript, as required by section 452.340.5, makes the child ineligible for continued child support. *Id.* at 371–72. But this court also concluded that section 452.340.5 does not contain a reimbursement provision and that a parent is only entitled to reimbursement for money already paid when a child is emancipated under section 452.370.4. *Id.* at 373. This court further concluded that the failure to furnish a transcript as required by section 452.340.5 does not by itself emancipate a child under section 452.370.4 and that a parent is, therefore, not entitled to reimbursement solely because a child fails to furnish a transcript. *Id. Accord Jansen v. Westrich,* 95 S.W.3d 214, 219–20 (Mo.App. S.D.2003) (agreeing with *Rogers* and holding that father was not entitled to refund of paid child support, even though child was not eligible for such support given failure to furnish transcript, because section 452.370.4, the child emancipation provision, is the only one that authorizes reimbursement of paid child support and failure to furnish transcript does not result in emancipation).

Ms. Smith argues that *Rogers* should be revisited. She bases this request upon her reading of *In re Kohring,* 999 S.W.2d 228 (Mo. banc 1999) and *Morton v. Myers,* 21 S.W.3d 99 (Mo.App. W.D.2000). Both *Kohring* and *Morton* hold that a parent does not have an obligation to pay child support during a semester in which the child is ineligible to receive such support for failing to furnish a transcript. *See Kohring,* 999 S.W.2d at 234 (trial court erred in ordering father to pay child support for spring 1998 term where daughter failed to provide transcript for fall 1997 term until May 1998); *Morton,* 21 S.W.3d at 107–08 (where father did not receive notification of daughter's grades for spring 1998 semester or of the courses for which she registered for the fall 1998 semester until the trial court ordered mother to

provide the information in December 1998, the trial court was directed to enter an order finding that father was not obligated to pay child support for the spring 1998 and fall 1998 semesters).

Ms. Smith argues that her case is analogous to *Kohring* and *Morton* because Scott was similarly ineligible for support during the spring 2001 semester, relieving her of any obligation to support him during that time. Under *Rogers* and *Jansen,* however, Ms. Smith's case is distinguishable from *Kohring* and *Morton* because she is seeking reimbursement for money that she already has paid during a semester of ineligibility, rather than money that a court subsequently has ordered her to pay. *See Rogers,* 87 S.W.3d at 372 and n. 3 ("[I]n this case, we are dealing with the unique situation where a parent *has already made the child support payments in question,* and instead of petitioning to a court to be relieved of a debt or future payment (as was done in each of the aforementioned cases, Mr. Phillips [sic] sought the unique relief of having payments, already disbursed by him, reimbursed)"); *Jansen,* 95 S.W.3d at 220 ("The interpretation in *Rogers* is also consistent with the line of cases holding that a parent who voluntarily exceeds decreed child support payments may not claim a credit against future payments.... Father's payment of child support during those terms Aaron did not fulfill the requirements of Section 452.340(5) is, in essence, a voluntary overpayment of child support. If Father is not entitled to a credit against future child support payments, we see no reason why he is entitled to a refund of the child support monies already paid."). Point denied.

**E. Not Allowing Ms. Smith to Pay Christopher's College Expenses Directly to the University (Point VI)**

Ms. Smith complains that the trial court abused its discretion by not allowing

her to pay Christopher's college expenses directly to the university. She reasons that this is the only way to avoid paying too much or too little in support since Christopher's college costs may fluctuate over time.

■ As discussed already, the trial court has three options for ordering the payment of college expenses: it may include such expenses in its Form 14 calculation; it may first rebut the Form 14 amount as unjust or inappropriate and then add an appropriate amount for college expenses; or it may enter a separate order of support for college expenses in lieu of including them in the Form 14 calculation or rebutting the Form 14 amount. *Ricklefs*, 39 S.W.3d at 877–78. *See also Toomey v. Toomey*, 636 S.W.2d 313, 315 (Mo. banc 1982) (pre-Form 14 case in which the Missouri Supreme Court recognized the propriety of allowing educational expenses to be paid directly to the school).

Ms. Smith cites no authority for the proposition that the trial court abuses its discretion by including college costs in the Form 14 amount. Although she cites *Ricklefs* for the proposition that "the present Form 14 scheme adopted by the Missouri Supreme Court envisions a separate order of support," 39 S.W.3d at 878, she overlooks the context in which this statement appears. In *Ricklefs*, the court said:

> The change, created by the caveat concerning "other extraordinary child-rearing costs" in the alternatives available to the trial court in awarding child support for post-secondary educational expenses, is logical inasmuch as many times such expenses are not present expenses, but future expenses triggered upon enrollment at a later date such that they cannot be reflected as part of a Form 14

calculation of the PCSA or a rebuttal thereof.

*Id.*

That is not the case here. At the time that the trial court in this case included Christopher's college expenses in the Form 14 calculation, those expenses were known to be $8,418 per year. Although Ms. Smith speculates that those known expenses may fluctuate in coming years if Christopher obtains additional grants and scholarships or if tuition increases, the trial court can address those changes if they occur. Point denied.

### F. Not Allowing Ms. Smith to Pay Child Support Directly to Christopher (Point VII)

■ Ms. Smith complains that the trial court abused its discretion by refusing to allow her to make child support payments directly to Christopher because "it was uncontroverted that Chris is responsible and able to competently manage such support payments." While Ms. Smith cites authority recognizing that the trial court has discretion to order that a parent pay support directly to the child, she cites no authority for the proposition that the trial court abuses its discretion when it declines to do so. She simply declares that "[w]hen all parties agree that the child is competent and able to manage his child support, it is an abuse of discretion for the trial court not to order such payments to be made directly to the child as authorized by RSMo § 452.340.5."

On the contrary, the trial court had a very good reason for ordering that the payments be made to Mr. White. Christopher testified that he did not want the payments to go to him. His explanation was both logical and practical:

> Q: Okay. At this point in time—and maybe this is an important question, before I forget—part of your mom's re-

quest in her motion that the Judge has to decide is she is wanting to send what amounts to your support directly to you. Okay, in other words, it would—you'd get a check each month. Do you want that to happen?

A: No.

Q: Okay. Would you please explain why to the Court that you don't want that to happen.

A: Well, it doesn't make any sense because I'm not paying any of the bills. I don't get the bills, so—and that's kind of what the child support is for is to pay bills and, I mean, that's why—I'm going to be living at my house, I mean, I wouldn't know what to do with the money.

Q: Would you prefer that the money go to your father and that he will, if you will, make those expense payments for you?

A Yes.

### G. The Attorney's Fee Award (Point III)

█ In *Smith I,* this court concluded that there was sufficient evidence to support the trial court's determination that Ms. Smith was liable for civil contempt for failing to pay her share of the children's orthodontics bills. 67 S.W.3d at 746. Because the evidence presented by Mr. White did not support the sanction imposed for the contempt, however, this court remanded the case to the trial court "to reconsider the monetary sanction and to formulate that element of the judgment in a manner consistent with the principles of civil contempt." *Id.* at 747.

On remand, the trial court found that Ms. Smith "remains obligated to pay her proportionate share of the orthodontic bill in the amount of $4,463.75." The court also found that the parties' marital settlement agreement "provides for reasonable attorney's fees to be paid by the party breaching the agreement."[5] The trial court then awarded Mr. White $4,850 in attorney fees based upon Ms. Smith's breach of the agreement in failing to pay her share of the orthodontics bills.

Ms. Smith complains that the trial court erred in awarding such fees because the fee award included services unrelated to the contempt issue, including modification of child support. She directs us to *Smith I.* Initially, we question whether *Smith I* addresses the issue now before us. In its discussion of contempt, *Smith* I dealt solely with the appropriate sanction for civil contempt. 67 S.W.3d at 746–47. It did not consider the appropriateness of awarding attorney's fees under the terms of the parties' marital settlement agreement.

Even if *Smith I* is inapposite, however, we agree with Ms. Smith that there is not substantial and competent evidence to support the trial court's $4,850 attorney fee award for breach of the marital settlement agreement. The two exhibits upon which Mr. White relied to justify an award of attorney's fees do not indicate what portion of the fees resulted from Ms. Smith's breach of the marital settlement agreement. The first exhibit—an invoice for services—merely says "Cost of Appeal— IN THE MISSOURI COURT OF AP-

---

5. The fee provision of the settlement agreement says: "If a breach of this agreement results in the other party being required to employ an attorney to enforce the terms of this agreement, the party breaching this agreement shall pay the reasonable attorney's fees, costs, and damages incurred by the other party in enforcing same. However, no attorney's fees shall be recovered unless the party seeking enforcement shall have given the breaching party a written notice of the alleged failure to perform and said failure was not cured within five (5) days of receipt of said notice."

PEALS FOR THE WESTERN DISTRICT" and lists $3,500 as the total due. The trial court's amended judgment says that Mr. White incurred this amount of fees "in successfully defending this Judgment in the Court of Appeals" in *Smith I,* but *Smith I* addressed modification of child support, too. There is no evidence in the record before us that explains what portion of the fees was incurred on the contempt issue.

The second exhibit—another invoice—says "Cost of—Circuit Court of Buchanan County, Missouri MOTION TO MODIFY AND COUNTER–MOTION TO MODIFY" and lists a total due of $1,500. The trial court's amended judgment attributes $500 of this $1,500 sum to the contempt issue, but the exhibit does not support an allegation of $500 of the $1,500 to the contempt issue. *See, e.g., Reding v. Reding,* 836 S.W.2d 37, 41 (Mo.App. S.D.1992) (party requesting fees needs to show extent of necessary services so that appellate court can examine evidence to determine propriety of trial court's award). While we agree with Mr. White that the trial judge is an expert on attorney's fees, an award of such fees must not be contrary to evidence in the record. We reverse and remand the case for further proceedings so that the trial court may develop the record as to what portion of the attorney's fees is attributable to the breach of the marital settlement agreement. *See Devries v. Devries,* 804 S.W.2d 825, 828 (Mo.App. W.D.1991).

Accordingly, point III is granted.

## Mr. White's Cross Appeal: Scott's Emancipation

Mr. White presents one point in his cross appeal. He argues that the trial court erred in finding that Scott was emancipated under section 452.340.5 because of his failure to obtain credit for twelve hours of coursework during the spring 2001 semester. Mr. White claims that this finding violates public policy, defeats the legislative intent, and violates the due process and equal protection clauses of the state and federal constitutions.

### A. Mr. White Has Failed to Preserve His Constitutional Claims for Appeal

 "Even in a court-tried case, where a post-trial motion is not necessary to preserve an otherwise properly raised issue for appellate review, the appellant must make some effort to bring the alleged error to the trial court's attention.... An issue not advanced at all in the trial court is not preserved for appellate review." *McMahan v. Mo. Dep't of Soc. Servs.,* 980 S.W.2d 120, 126 (Mo.App. E.D.1998). Thus, this court has refused to review constitutional claims in a court-tried case where the appellant has failed to include those claim in its motion for new trial. *Allright Grand, Inc. v. Kansas City,* 515 S.W.2d 890, 892, 893–94 (Mo.App.1974) ("In court tried cases if constitutional questions are not raised and presented in a motion for new trial, if filed, they are deemed waived for purposes of appellate review.").

So far as it appears from the record on appeal, Mr. White never raised any constitutional claims in the trial court. His failure to do so precludes appellate review of his equal protection[6] and due process claims.

---

6. In any event, the Missouri Supreme Court has rejected the argument that section 452.340.5 burdens a suspect class consisting of unmarried, divorced, or legally separated parents. *In re Marriage of Kohring,* 999 S.W.2d 228, 232 (Mo. banc 1999). The court likewise rejected the argument that section 452.340.5 burdens a suspect class consisting of the children of such parents. *See Id.*

## B. Missouri Courts Have Previously Rejected Mr. White's Remaining Arguments

 Missouri courts recently have interpreted section 452.340.5 to require that a student successfully complete at least twelve credit hours per semester to avoid emancipation. *See Lombardo,* 35 S.W.3d at 390–91 (by specifying that student must complete at least twelve hours of credit each semester, the legislature "clearly intended that the child be required to receive credit for at least twelve hours" and where child only received credit for six of twelve hours of courses in which she had enrolled, she was emancipated and father's support obligation terminated); *Mandel v. Eagleton,* 90 S.W.3d 527, 530–31 (Mo.App. E.D.2002) (agreeing with *Lombardo* and holding that where child enrolled in more than twelve hours of courses for semester but dropped two of the courses when he realized that he would not make adequate grades in those courses, child only completed ten hours of credit for semester and was therefore emancipated for failing to comply with section 452.340.5).[7]

Although we agree with Mr. White that this interpretation produces a harsh result in many cases—including this one—the remedy lies with the General Assembly, which has the power to amend the statute. Point denied.

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings as stated in this opinion.

PAUL M. SPINDEN, P.J., and RONALD R. HOLLIGER, J. concur.

---

7. In his brief, Mr. White points out that Missouri courts have invoked the "manifest circumstances" doctrine as an exception to the requirement of continuous enrollment under section 452.340.5. "Section 452.340.5 provides an exception to the continuous enrollment requirement where the court specifically finds that manifest circumstances prevented the child from attending school." *Harris v. Williams,* 72 S.W.3d 621, 624 (Mo.App. E.D. 2002). But "[m]anifest circumstances are those situations beyond a child's control. If a situation is within a child's control … the departure is considered voluntary and the fact that the interruption in enrollment is temporary does not justify the court in waiving the continuous enrollment requirement." *Harris,* 72 S.W.3d at 624. "Manifest circumstances" include a student's inability to attend classes regularly due to illness, physical disability, financial difficulty, or a parent's refusal to pay child support. *Mandel,* 90 S.W.3d at 531.

Neither in his point relied on nor in the argument section of his brief does Mr. White suggest why or how the court should apply the manifest circumstances exception in this case. Scott's failure to obtain credit for his Spanish course does not seem like a situation beyond his control. Moreover, as Ms. Smith points out, Mr. White did not raise this issue in the trial court, precluding him from raising it for the first time on appeal.