Tracy J. MEUSCHKE, Appellant,

v.

Cindy Ann JONES, Respondent.

No. WD 62966.

Missouri Court of Appeals,
Western District.

May 25, 2004.

Laurie S. Ward, Sedalia, MO, for appellant.

Michael X. Edgett, Clinton, MO, for respondent.

Before LOWENSTEIN, P.J., EDWIN H. SMITH and HOWARD, JJ.

HAROLD L. LOWENSTEIN, Judge.

In November 2002, Tracy J. Meuschke ("Father") sought a declaration that his daughter, Amy Jo Meuschke, who turned eighteen in April 2001 became emancipated effective in late January 2002, because she was only taking eight credit hours of college classes. Father sought reimbursement for child support payments he made after January 2002. Amy's mother ("Mother") moved to increase Father's child support obligation. The trial court declared that Amy was unemancipated and granted Mother's motion. On appeal, Father contends that the trial court misapplied the law in Section 452.340.5 [1] concluding that there were manifest circumstances beyond Amy's control preventing her from taking the required credit hours. The judgment is reversed.

## I. FACTS

Father was ordered to pay $341 a month in child support to his daughter, Amy Jo Meuschke, after the marriage was dissolved. Payments were to continue after Amy Jo's eighteenth birthday, provided Amy pursued a post-secondary education in compliance with Section 452.340.5. [2] Father was also ordered to pay Amy's health insurance, which cost $78 per month. The decree did not explicitly award the dependency income tax exemption for Amy to either party, but in January 2002 Father agreed, in a joint agreement, that Mother could claim the exemption. That exemption saved Mother $753 for the 2001 tax year.

Amy graduated from high school in May 2001 and then enrolled, before October 2001, at Central Missouri State University ("CMSU") for the fall 2001 semester. CMSU charges $140 a credit hour—i.e., $1,680 for twelve hours and $1,260 for nine hours. Amy received a Pell grant of $925 and a scholarship. She completed twelve credit hours in the Fall 2001 semester.

In the Spring 2002 semester, which began in January, Amy enrolled for eleven hours at CMSU. Sometime in January, she dropped a three credit-hour course because she had not taken a prerequisite for the class. (She was financially able to take eleven hours.) She was unaware of the prerequisite when she enrolled. She could not enroll in another course, because there were then no openings. Had she taken the course, she would not have received credit. However, CMSU did not order that Amy drop the class or suggest that she do so.

During both semesters, Amy worked at least fifteen hours a week as a nanny for a local couple, making $75 a week. In May 2002, around two months after dropping to eight credit hours, Amy lost this job through no fault of her own. (The mother of the child she was caring for was a schoolteacher who had summers off.) Amy sought a new job but was unable to find a steady job in Warrensburg, where CMSU is located.

1. All statutory references are to RSMo. (2000) unless indicated otherwise. The pertinent language of this law appears *supra*.

2. For now, the relevant portion of Section 452.340.5, requires the child to enroll in college by October first and complete at least twelve credit hours a semester to continue the support obligation until the child is twenty-two. This subsection allows the court to waive the October first requirement for enrollment where circumstances "manifestly dictate." The statute also makes allowance for continued support where the child who works fifteen hours a week to take "as few as nine credit hours ..."

In the summer 2002 semester, Amy took two credits hours at CMSU and worked off-and-on as a baby sitter. In the fall 2002 semester, for which she had qualified for $4,000 in loans and a Pell grant of indeterminate amount, Amy didn't take any classes at CMSU. She attempted to use her financial aid to take classes elsewhere, by filing an application with CMSU's Office of Student Financial Assistance. She claimed in the application that a "[f]amily situation will require me to be out of the Warrensburg area off and on for the next 6 months. Therefore a university that offers online and 8 wk [sic] classes is more suitable at this time." She also stated that she would not be taking classes at CMSU from August 19, 2002, till December 2002, that is, during the fall 2002 semester. The Office told her—incorrectly, it turned out—that she couldn't use her financial aid solely for distance learning, online, or weekend classes. (In December 2002, the Director of the Office sent Amy a letter that said that Amy could have used her financial aid package to take these classes, though the package "would normally [be] for a total amount less than that received if the student was enrolled for regular on-campus coursework.")

Amy attempted to take classes at Park University, but was unable to do so. She took no classes during the fall 2002 semester. For three days of every week, she lived with her fiancé in Springfield, where she had a part-time job—the only job she could find—that paid $5.30 an hour. The rest of the week she lived with Mother in Warrensburg.

Amy bought a used car for $6,700 soon before the start of the fall 2002 semester. Her down payment was $400, one hundred of which represented net profits from the sale of her old car. Her car payments and auto-insurance premiums remained the same, around $120 per month. During the fall 2002 semester, Amy went on a vacation to Myrtle Beach with her boyfriend, Mother, and Mother's boyfriend. Amy reimbursed Mother for the cost of her (Amy's) ticket, $266. Mother paid for Amy's other vacation-related expenses.

In November 2002, Father moved to have Amy declared emancipated, on the grounds that she was not enrolled in college. That month, Mother bought a $168,000 home in Lee's Summit. The house was purchased solely with loans. Mother's portion of the mortgage payment was the same as her former rent, $500.00 a month.

After learning of Father's motion, Amy registered to take eleven credit hours during the spring 2003 semester at CMSU. During this semester, she received student loans and a Pell grant, and worked part-time as a nanny, earning $100 a week. Father did not receive a copy of Amy's transcript or any enrollment forms until December 2002, when he received a copy of her transcript. December 2002 was (as of the date of this appeal) the only month in which Father did not make his child support payment.

Mother filed a motion in opposition claiming that Amy "was unable to attend [CMS in the fall 2002 semester] because she could not get a loan and [Father] would not assist her with her school expenses"; that Amy's nonattendance at CMSU during the Fall 2002 semester was temporary; and that manifest circumstances beyond Amy's control prevented her from being continuously enrolled in college classes. Mother also moved the court to increase Father's child support payment because Father's presumed child support payment, according to the applicable law, exceeded his current child support

payment by twenty percent.[3] Mother said nothing about Amy's failure to complete nine credit hours during the Spring 2002 semester.

Father contended that Amy did not complete twelve credit hours in the Spring 2002 semester, that she did not take any classes in the fall 2002 semester, and that she did not give him the proof-of-enrollment and -completion forms mandated by Section 452.340. Father denied the existence of an over-twenty-percent difference between his actual and the presumed child-support obligation, and counterclaimed for reimbursement of the child support payments he made after January 2002.

The trial court denied Father's motion to have Amy declared emancipated and end his support obligation and granted Mother's motion to increase Father's child support obligation from $341 to $427 per month. The court made no specific finding that manifest circumstances prevented Amy from completing nine credit hours during either the spring or fall 2002 semesters. Mother was allowed to retain the income tax exemption for Amy.

## II. ANALYSIS

■ Father has raised two interrelated points on appeal. First, he contends that the trial erred in denying his motion to declare Amy emancipated, because Amy did not complete nine credit hours in the spring 2002 semester, she did not complete any courses in the fall 2002 semester, and no manifest circumstances beyond Amy's control prevented her from attending college. His second point asserts he is entitled to be reimbursed for all the post-emancipation payments, that is, the payments made after January 2002, the month in which Amy dropped to below nine credit

hours. The denial of a motion to declare a child emancipated and to terminate child support must be affirmed unless it is against the weight of the evidence or it either misconstrues or misapplies the law. *Kerr v. Kerr,* 100 S.W.3d 912, 914 (Mo. App.2003).

### A. WAS AMY EMANCIPATED AFTER JANUARY 2002?

■ In general, a parent's obligation to make child support payments terminates when the child turns eighteen. § 452.340.3. An exception to this general rule is contained in Section 452.340.5, which states:

> If when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction, the parental support obligation shall continue, if the child continues to attend and progresses toward completion of said program, until the child completes such program or reaches age twenty-one, whichever first occurs. If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school or completion of a graduation equivalence degree program and so long as the child enrolls for and completes at least twelve hours of credit each semester, not including the summer semester, at an institution of vocational or higher education and achieves grades sufficient to reenroll at such institution, the parental support obligation shall continue until the child completes his or her education, or until the child reaches the age of twenty-two, whichever first occurs.

Eligibility for continued child support is contingent on the child submitting

> at the beginning of each semester ... a transcript or similar official document

**3.** *See* Section 452.370.

provided by the institution of vocational or higher education which includes the courses the child is enrolled in and has completed for each term, the grades and credits received for each such course, and an official document from the institution listing the courses which the child is enrolled in for the upcoming term and the number of credits for each such course.

§ 452.340.5. If the child works at least fifteen hours a week during a semester, he or she need only take nine credit hours per semester to remain eligible for child support, provided the other requirements of Section 452.340.5 have been satisfied.

 If the minimum credit-hour requirement is not satisfied, the child is deemed emancipated, and the duty to pay child support is terminated. *Smith v. White*, 114 S.W.3d 407, 421 (Mo.App.2003). *Cf. Daily v. Daily*, 912 S.W.2d 110, 112 (Mo.App.1995) (holding that child's taking only three credit hours did not result in emancipation; the then version of Section 452.340 in effect did not have a minimum hour requirement); *Mayes v. Fisher*, 854 S.W.2d 430 (Mo.App.1993). The failure to satisfy the credit-hour requirement can be excused if (1) the failure is temporary, (2) the child evidently intended to satisfy the hourly requirement in the very next non-summer semester, and (3) manifest circumstances beyond the child's control prevented the child from satisfying the requirement. *Mandel v. Eagleton*, 90 S.W.3d 527, 531 (Mo.App.2002). Such manifest circumstances include illness, physical disability, financial difficulty, or a parent's nonpayment of child support.

*Kasten v. Frenz*, 109 S.W.3d 210, 213 (Mo. App.2003); *Smith*, 114 S.W.3d at 421 n. 7. "[I]f circumstances are within a child's control, the departure is considered voluntary and the fact that the interruption in enrollment is temporary does not justify the court in waiving the continuous attendance requirement." *Kasten*, 109 S.W.3d at 213.

Since Amy was working more than fifteen hours a week during the spring 2002 semester, she had to complete nine credit hours to qualify for continued child support. She only completed eight. However, the trial court, in holding that Amy was unemancipated, tacitly accepted Mother's claim that there were manifest circumstances excusing her failure to take at least nine credit hours that semester— namely, Amy's ignorance of the existence of the (unfulfilled) prerequisite to the three-credit-hour course she dropped.[4]

Father submits two distinct reasons why the trial court erred in applying the "manifest circumstances" exception. First, Father claims that the exception was inapplicable because no external force compelled Amy to drop below nine credit hours. *Cf. Kasten*, 109 S.W.3d at 214. Amy dropped the three credit-hour class "of her own volition." *Daily*, 912 S.W.2d at 113. No one at CMSU recommended that Amy drop the course, let alone ordered her to do so. Amy was not misled into believing the course did not have a prerequisite. Amy did not testify that she was unable to discover the existence of the prerequisite. Granted, had she completed

4. Father does not argue that the trial court's failure to make an explicit finding of manifest circumstances beyond Amy's control renders inapplicable the "manifest circumstances" exception to the continuous enrollment requirement. *See Harris v. Williams*, 72 S.W.3d 621, 624 (Mo.App.2002) ("Section 452.340.5 pro-

vides an exception to the continuous enrollment requirement where the court specifically finds that manifest circumstances prevented the child from attending school."); *Marriage of Hammerschmidt*, 48 S.W.3d 614, 618 (Mo. App.2001).

the course she would not have received credit for it—and thus the course would not have counted toward the minimum credit requirement. *Lombardo v. Lombardo,* 35 S.W.3d 386, 389 (Mo.App.2000). Still, it was Amy who picked the courses in which to enroll. (Moreover, even though Amy was unable to enroll in a replacement class *at CMSU* after she dropped below nine credit hours, that doesn't mean she couldn't have enrolled elsewhere. There was no evidence that Amy was unable to take a replacement course elsewhere—e.g., over the Internet.) There is no "mistaken enrollment" exception to Section 452.340.5's minimum-hour requirement. Though this interpretation may seem to produce a harsh result, any remedy lies with the legislature, which has clearly spoken on exceptions to the statute. *Smith v. White,* 114 S.W.3d at 421.

The trial court misapplied the law in concluding that manifest circumstances prevented Amy from taking the required credit hours. Thus, this court need not address Father's claim that she didn't satisfy prong one of the exception.

### B. Was Father Entitled to Be Reimbursed for Post-Emancipation Payments?

■ Father claims that he was entitled to be reimbursed for all child support payments he made after Amy became emancipated, because Mother did not notify him of Amy's emancipation. A parent's child support obligation ends upon the emancipation of a child, unless a divorce decree or settlement agreement provides otherwise. *Perry v. Perry,* 114 S.W.3d 865, 869 (Mo.App.2003); *Rohner v. Long,* 57 S.W.3d 920, 922 (Mo.App.2001). If the parent entitled to receive child support does not notify the payer parent of the child's emancipation, the parent entitled to receive child support must reimburse the payer parent "for child support paid following emancipation of a minor child, plus interest." § 452.370.4.

Mother did not notify Father of Amy's emancipation in January 2002, and Father continued making payments. The only question is whether Amy was a "minor child" when she became emancipated.

■ Chapter 452 does not define the terms "infant," "minor," "adult," or any variants thereof. In the absence of a statutory definition to the contrary, "the age of majority for child support remains the date of emancipation or age twenty-one." *Biermann v. Biermann,* 657 S.W.2d 65, 67 (Mo.App.1983). The first prong of the disjunctive definition is inapposite because, if applied to Section 452.370.4, it would transform the statute into gibberish; the statute would mandate reimbursement "for child support paid following the emancipation of a[n] [emancipated] child." *See Hoskins v. Bus. Men's Assurance,* 116 S.W.3d 557, 580 (Mo.App.2003) (statutes are to be interpreted to avoid unreasonable or absurd results). (An emancipated child cannot be emancipated a second time.) Under the second prong of the definition of majority, Father is entitled to reimbursement, for Amy was not yet twenty-one when she became emancipated. Consistent with *Biermann,* this court has ordered reimbursement under Section 452.370.4 where the child had become emancipated after turning eighteen, but before turning twenty-one. *Perry,* 114 S.W.3d at 869; *Rohner,* 57 S.W.3d at 923. Thus, Mother must reimburse Father for all payments made after the end of January 2002.

The judgment is reversed and the case remanded to enter judgment declaring Father's obligation for support ended in January 2002, and ordering Mother to reim-

burse for all support payments received after January 2002.

All concur.